UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

UNITED STATES OF AMERICA,                               Criminal No. 06-19 MJD/AJB

        Plaintiff,

v.                                                      **REPORT AND RECOMMENDATION**

VERONICA MARIA SALLIS,

        Defendant.

    Michael A. Dees, Esq., Assistant United States Attorney, for the plaintiff, United States of America;

    Deborah Ellis, Esq., appearing for the defendant, Veronica Maria Sallis.

    This action came on for hearing before the Court, Magistrate Judge Arthur J. Boylan, on April 13, 2006, at the U.S. Courthouse, 180 East Fifth Street, St. Paul, MN 55101  The Court issued an Order on Motions dated April 14, 2006, reserving defendant Veronica Maria Sallis' motions to suppress evidence for submission to the District Court on report and recommendation.

    Based upon the file and documents contained therein, along with testimony and exhibits received at hearing, the Magistrate Judge makes the following:

**Findings**

    **Stop and Arrest.**  Minnetonka Police Officer James A. Stromberg was on duty on December 21, 2005, when he received a police radio transmission at 10:02 a.m. in which it was reported that the Wells Fargo Bank in Hopkins, Minnesota, had just been robbed.  The suspect was described in the dispatch as a black female wearing black clothes and driving a tan Grand Am.  At the

time Officer Stromberg was on patrol in an area near the border between Hopkins and Minnetonka, and he proceeded to the border area to watch for the suspect. As the officer was driving eastward from the Hopkins Crossing area on Highway 7 he saw a black female standing outside a tan or gold Pontiac Grand Am in a parking lot in front of a town home complex located on a frontage road. She had a fur trimmed hood up over her head. The officer's observation was made at 10:06 a.m., approximately four minutes after the initial robbery report, and a distance of approximately one-half to three quarters of a mile from the bank that was robbed. Officer Stromberg lost sight of the woman and the Grand Am in the time it took to exit off Hwy. 7 and go back on the frontage road. Consequently he radioed in his observation and requested a stop of the vehicle. Minnetonka Police Officer David Riegert was driving west on Hwy. 7 when the heard Stromberg's radio report and Riegert promptly spotted the subject Grand Am going west on Hwy. 7. Riegert made a U-turn and followed on eastbound Hwy. 7, going 80 to 85 miles per hour to catch up. He then observed the subject vehicle make a U-turn to go west, whereupon the officer made another U-turn in the median to continue to follow. Officer Riegert paced the subject vehicle traveling at rates that varied between 60 and 63 miles per hours in a 55 mph speed zone as the vehicle proceeded on west bound Hwy. 7 and exited onto Highway 169. Shortly after going onto Hwy. 169 Officer Riegert activated his patrol car lights to make a stop, but he did not activate the siren. He followed from a two-car-lengths distance for one to one- and a half miles until the Grand Am pulled off to the right on Hwy. 169 and stopped, straddling the fog line, partly on the shoulder and partly in the right lane.

   Meanwhile, Officer Stromberg heard radio reports made by Riegert and arrived at the scene 5 to 6 minutes after the stop. Officer Stromberg stopped in the right lane to block traffic in that

lane and went to confer with Officer Riegert. The officers decided to approach the vehicle in a modified high risk fashion, ie. weapons drawn but not raised. Stromberg went to the driver's door and asked the woman driver, the defendant in this matter, for a drivers license. The officer recognized the woman as the person he had seen at the town home complex and he advised her that she matched the description of the bank robbery suspect. She responded that she was coming from the Knollwood Shopping Mall. Stromberg noticed the odor of alcohol on the driver's breath and she appeared confused and stumbled with her words as they engaged in conversation for 4-5 minutes. Upon request by the officer the driver exited the vehicle and a pat search was conducted at the rear of the car. No evidence was seized from the defendant's person. In a search of the vehicle interior the officer observed a dark knit stocking cap with eye holes in the passenger seat area. Based upon his law enforcement experience Officer Stromberg believed the driver to be intoxicated and field sobriety tests were administered. The defendant failed a breath test by failing to provide an adequate sample, and she also failed a heel-to-toe walking test, a one-leg-stand test, and 2 out of 3 aspects of an eye-gaze nystagmus test.

At approximately 10:45 a.m. the defendant was arrested for driving while impaired and was handcuffed, searched, and placed in Officer Riegert's squad car for transport to the Minnetonka Police department. At the police station she was booked by Officer Riegert, and Officer Stromberg gave her the Minnesota implied consent advisory. The defendant indicated her understanding of the advisory and made phone calls. She subsequently agree to submit to a breath test which was administered at approximately 11:42 a.m. and resulted in a .13 test reading. Defendant was thereafter given the <u>Miranda</u> warning prior to interrogation regarding the DUI, but when the interview began she

indicated that she wanted legal advice and no questioning took place at that time.

**Statements.**  At approximately 5:13 p.m. on December 21, 2005, FBI Special Agent Dave Rapp met with defendant Sallis in an interview room at the Hopkins Police Department for purposes of an interview.  Special Agent Rapp was accompanied by FBI Special Agent Aaron Applebaum and he advised the defendant that she was being held in regards to the bank robbery.  The agents were dressed in plain clothes and were not carrying firearms.  The defendant asked the agents about the status of her son and she was advised that he was with relatives.  Agent Rapp read the defendant her <u>Miranda</u> rights and asked if she understood them.  Ms. Sallis did not sign the rights and waiver form and declined an interview, though she did ask the agents some questions and made comments that were not about the case.  At some point the defendant asked why she was there and was told that she was a suspect in six bank robberies.  Thereafter, the agents left the defendant's presence, but remained at the police station.  Approximately one hour later Special Agent Rapp was advised that the defendant now wanted to talk with him.  He met with her again and re-read the <u>Miranda</u> advisory.  At this time the defendant stated that she understood, she signed the Advice of Rights form (Hearing Exh. No. 3), and she made incriminating statements and admissions.  The interview lasted approximately one-half hour, during which time the defendant was coherent, responsive, and appropriate in her conversation.

**Search Warrants.**  On December 21, 2005, Hennepin County District Court Judge Catherine Anderson issued separate warrants to search a vehicle described as a 2004 Pontiac Grand Am, further identified by license plate number and VIN number (Hearing Exh. No. 1), and a particularly described apartment unit in Hopkins, Minnesota. (Hearing Exh. No. 2).  The warrant

affidavit indicated that the defendant had been seen in the vehicle and that defendant's name was on the lease for the apartment unit to be searched.  Both search warrants identified the objects of the warrant as items of identification/ownership, a dark hooded winter coat, a dark knit hat, U.S. currency in bills, and items showing constructive possession of stolen property or cash.  The vehicle warrant also authorized seizure of black leather gloves with fur type rims.   The warrants were issued on the basis of probable cause contained in the substantially identical affidavits of Hopkins Police Officer Gretchen Monahan, including information obtained by police observation and surveillance, eyewitness reports and descriptions, and a vehicle stop.

Based upon the foregoing Findings, the Magistrate Judge makes the following:

**Conclusions**

**Vehicle Stop.**   The stop of the Pontiac Grand Am that defendant Veronica Maria Sallis was driving on December 21, 2005, was not unlawful.  The vehicle stop by Officer Riegert was based upon reasonable suspicion of a traffic violation, *i.e.* speeding, and was not conducted in violation of the Fourth Amendment.  United States v. Cummins, 920 F.2d 498, 500-01 (8th Cir. 1990).  The officer had sufficient legal basis for the stop, regardless of any other motive or mistaken belief he may have entertained.  United States v. Mallari, 334 F.3d 765, 766 (8th Cir. 2003)(citing United States v. Thomas, 93 F.3d 479, 485 (8th Cir. 1996) and Whren v. United States, 116 S.Ct. 1769, 1774 (1996)). Furthermore, the vehicle stop was justified on the basis of the officer's reasonable articulable suspicion that the driver had been involved in a bank robbery under circumstances whereby the vehicle and the driver met the description of the suspect in the robbery and the vehicle being driven by the suspected bank robber, and the vehicle and suspect were observed within close proximity of the crime

scene.  Defendant's arrest was lawful and appropriate based upon probable cause the she was driving while impaired.  Suppression of evidence obtained as the result of the vehicle stop and defendant's arrest, including evidence observed or obtained in a warrantless search of the vehicle, is not required.

**Statements.**  Defendant Veronica Maria Sallis' interview statements to FBI Special Agent Dave Rapp were made knowingly, intelligently, and voluntarily.  Defendant was properly advised of her rights as an accused person, she understood her rights, and she effectively waived her right to remain silent and her right to the assistance of an attorney.  No threats or promises were made to induce defendant's cooperation.  Though defendant was in custody, she was not subjected to coercion and her statements were not the fruit of an unlawful vehicle stop or arrest.  United States v. Robinson, 20 F.3d 320, 322-23 (8th Cir. 1994). There is no basis for suppression of defendant's interview statements.

**Search Warrants.**  Evidence seized pursuant to a warrant to search a particularly identified Pontiac Grand Am automobile (Hearing Exh. No. 1) and a warrant to search a specifically described apartment residence in Hopkins, Minnesota  (Hearing Exh. No. 2), was not unlawfully obtained in violation of the constitutional rights of defendant Veronica Maria Sallis.  The vehicle and residence warrants were issued on December 21, 2005, and each of the warrants was based upon sufficient probable cause as stated in a separate affidavits of Officer Gretchen Monahan and as determined by Hennepin County District Court Catherine Anderson.  Each of the warrants properly and sufficiently identified the location of the respective searches and the items to be seized.  Furthermore, neither warrant was issued on the basis of probable cause evidence that was unlawfully obtained, and neither the warrants themselves nor evidence seized pursuant to the warrants can be

construed to be fruit of an unlawful vehicle stop or unlawful arrest. The search warrants in this matter were lawfully issued and there is no requirement for suppression of evidence seized pursuant to either warrant.

Based upon the foregoing Findings and Conclusions, the Magistrate Judge makes the following:

## RECOMMENDATION

The Court **hereby recommends** that:

1. Defendant Veronica Maria Sallis' Motion for Suppression of Evidence Obtained as a Result of Illegal Stops, Arrests and Searches be **denied** [Docket No. 15]; and

2. Defendant Veronica Maria Sallis' Motion for Suppression of Confessions or Statements in the Nature of Confessions be **denied** [Docket No. 17].

Dated:   April 27, 2006

       s/ Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before May 10, 2006.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.